UNITED STATES of America, Plaintiff,

v.

Ikponwensosa Joseph OSUNDE, a/k/a Eric Joseph Stevenson, Defendant.

No. CR–86–0327–JPV.

United States District Court, N.D. California.

June 20, 1986.

Sandra L. Teters, Asst. U.S. Atty., San Francisco, Cal., for plaintiff.

Victoria C. Belco, Asst. Fed. Public Defender, San Francisco, Cal., Joseph P. Russoniello is the U.S. Atty. for the N.D. of Cal. and James F. Hewitt is the Federal Public Defender for the Northern District, for defendant.

## MEMORANDUM OPINION AND ORDER

VUKASIN, District Judge.

### I. INTRODUCTION

On December 4, 1985 a person identifying himself as Eric Joseph Stevenson attempted to enter the United States at the Los Angeles International Airport. Despite the fact Stevenson was in possession of a U.S. passport, his appearance, manner and accented speech caused United States Customs Service inspectors to suspect that he was not in fact a U.S. citizen. Customs officers placed Stevenson in custody and turned him over to officials of the United States Immigration and Naturalization Service [hereinafter INS]. Stevenson has been in federal custody ever since. Through subsequent investigation the INS determined that his representations concerning citizenship were false, and it became evident that Stevenson was in fact one Ikponwensosa Joseph Osunde, a native of Lagos, Nigeria.[1]

---

1. On March 22, 1982 defendant Osunde, a native and citizen of Nigeria, was arrested by officers of the United States Immigration and Naturalization Service when it was discovered that his non-immigrant tourist visa, issued on December 18, 1981 in Lagos, Nigeria, had expired two months prior. This 1982 arrest was made during the course of an investigation into suspected counterfeiting of certain Immigration Service forms. After posting a $5,000 appearance bond, pursuant to an Order to Show Cause, Notice of Hearing and Warrant of Arrest of Alien, issued and served upon Mr. Osunde on March 22, 1982, the defendant was released from custody. Although he did make an appearance at the initial hearing, Osunde failed to appear at a subse-

On March 21, 1986 a criminal complaint was filed against the defendant charging violations of 18 U.S.C. § 911, for falsely representing himself to be a U.S. citizen, and 18 U.S.C. § 1001, for falsifying a material fact on a passport application. Both violations are alleged to have occurred in San Francisco on May 17, 1984, the date on which the defendant apparently submitted his application for a U.S. passport. On the same date the complaint was filed, March 21, 1986, the defendant was brought before a United States Magistrate and advised of the charges against him. This was the first time the defendant had been brought before either a judicial or administrative officer, despite the fact that he had been in continuous federal custody since December 4, 1985, a total of 106 days. On April 2, 1986, an indictment was handed down by the Grand Jury reflecting the above-described two charges.

## II. DISCUSSION

Defendant Osunde now moves the Court to dismiss the complaint and indictment with prejudice, on the grounds that the 106 day delay between his arrest and the lodging of the criminal complaint, as well as the 118 day delay between his arrest and indictment, violated the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, Rule 5 of the Federal Rules of Criminal Procedure, and certain provisions of the Immigration Code, 8 U.S.C. § 1357.

### A. THE SPEEDY TRIAL ACT

The Speedy Trial Act prescribes two distinct time periods within which the government must move against persons allegedly involved in criminal activity. The first is from arrest or service with a summons to the filing of the indictment or information. 18 U.S.C. § 3161(b). The second is from the filing of the indictment or information to the commencement of trial. 18 U.S.C. § 3161(c)(1). The case at bar concerns the pre-indictment period. Section 3161(b) provides:

> Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with charges. If any individual has been charged with a felony in a district in which no grand jury has been in session during such thirty-day period, the period of time for filing of the indictment shall be extended an additional thirty days.

There is no dispute that more than thirty days passed between the defendant's arrest and indictment. The question is whether the Speedy Trial Act's timetable, as well as the prescribed remedy for its violation, apply to the delay which occurred.

 It is abundantly clear to this Court that the substantive provisions of the Speedy Trial Act have been violated. The Act requires a defendant against whom a complaint is filed to be charged via indictment or information within thirty days of his arrest. Defendant Osunde's indictment was not handed down until 118 days after his arrest at Los Angeles International Airport. The appropriate remedy, as prescribed by § 3162(a)(1) of Title 18, would appear to be dismissal of the indictment.

 The prosecution, however, focuses its opposition to the motion on what appears to be a "gap" between substantive provisions of the Act, § 3161(b), and the section which describes the remedies available when there is non-compliance. *Compare* 18 U.S.C. § 3161(b) *with* 18 U.S.C. § 3162(a)(1). Section 3162(a)(1) states, in relevant part, that "[i]f in the case of any individual *against whom a complaint is filed* charging such individual with an offense, no indictment or information is filed within the time limit required by § 3161(b) of this chapter, such charge against that individual *contained in such complaint* shall be dismissed or otherwise

---

quent hearing and the proceedings were administratively terminated. From all appearances the defendant had left the United States.

dropped...." (emphasis added). It is the government's position that although § 3161 has been violated, the sanction of dismissal contemplated by § 3162 is not applicable because only 12 days passed between the filing of a complaint against the defendant on March 21, 1986 and his subsequent indictment on April 2, 1986. This, of course, flies in the face of the plain terminology of the Speedy Trial Act.

In *United States v. Solomon,* 679 F.2d 1246, 1252 (8th Cir.1982), cited by the prosecution in support of its position, the court recognized a "gap" in the remedial provisions of the Act. Accepting the fact that the Speedy Trial Act contains numerous unresolved policy issues, ambiguities, and drafting errors, the court refused to dismiss an indictment filed 74 days after an arrest because § 3162 does not specify what the remedy should be when § 3161(b) is violated but only an arrest has occurred and no complaint has been filed. *Id,.* Relying in part on other recent cases of the same circuit, the *Solomon* court concluded that the proper statutory construction of the term "arrest" was an arrest where the person is formally charged with an offense. *See United States v. Jones,* 676 F.2d 327, 331 (8th Cir.1982); *see also United States v. Padro,* 508 F.Supp. 184, 185 (D.Del. 1981).

The obvious and quite repugnant extension of the logic of the *Solomon* holding is that a person could be taken into custody, held for an indeterminate period of time without charge, then charged and indicted within thirty days, and have no redress under the Speedy Trial Act: an anomolous situation reminiscent of the governmental powers wielded by merry old England in the eighteenth century which prompted our Founding Fathers to defenestrate the British yoke and establish a more enlightened order as embodied by the Constitution and its various amendments. Clearly such a result is contrary to the spirit, if not the letter, of the Speedy Trial Act as demonstrated by the substantive provisions of § 3161.

Fortunately, the legal position advocated by prosecution can be rejected on the basis of Ninth Circuit precedent, and the underlying case law distinguished on a factual basis. In *Solomon,* the defendant was arrested on February 20, 1981 for alleged involvement in the trafficking of narcotics. The arrest was without a warrant. The defendant agreed to cooperate in the investigation of other suspected traffickers and was released the same day without being charged or indicted. On April 30, Solomon refused to cooperate further. On May 5, 1981 a complaint was filed, and on May 29 he was indicted for cocaine distribution. As previously discussed, the trial court denied Solomon's motion to dismiss under § 3161(a)(1) for the 74–day delay between his initial arrest and indictment.

The important factual distinction between the *Solomon* matter and the case at bar is that Solomon was immediately released after his arrest. Here, defendant Osunde has been in continuous federal custody since his arrest. To the extent it is asserted that a proper interpretation of the term "arrest," as contemplated under the Speedy Trial Act, would condone *continuous detention* without charge, this Court declines and refuses to make such an illogical inference. It is the restraint on individual liberty not merely procedural stagnation following the filing of formal charges which Congress intended to protect against when it passed the Act.

This conclusion is sustained, and the repugnant implication of *Solomon* rejected, by the recent Ninth Circuit opinion in *United States v. Antonio,* 705 F.2d 1483 (9th Cir.1983). In *Antonio,* the court declined to acknowledge any "loophole" or "gap" between the substantive and remedial sections of the Speedy Trial Act. The *Antonio* court stated, "Section 3162(a)(1) must be read in connection with § 3162(b) to mean that a 30–day period commences to run as to any charge on which that arrest was based." *United States v. Antonio, supra,* 705 F.2d at 1485. The *Antonio* court also implicitly recognized the validity of a narrow interpretation of the Act on the type of factual situation faced by the *Solo-*

*mon* court. The court opined that the 30–day period under § 3161(b) would not run if the defendant were to be released without charge and without other continuing restraint. *United States v. Antonio, supra,* 705 F.2d at 1485, n. 1. Clearly the posture adopted by the government in the case at bar, a broad interpretation of *Solomon,* cannot be countenanced by this Court. Good conscience, as well as case law in this circuit, mandates a holding that the dismissal sanction contemplated by § 3162(a)(1) applies when more than 30 days pass between arrest and indictment, regardless of any semantical distinction between formal and informal arrest.

Having determined that the sanction of dismissal is warranted in the matter at bar, the Court must now ascertain whether such dismissal should be with or without prejudice.[2] Section 3162(a)(1) sets a non-exclusive list of factors the Court should consider in making this determination.

> [T]he court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice.

18 U.S.C. § 3162(a)(1). Which sanction to be applied is within the Court's discretion. *United States v. Frey,* 735 F.2d 350, 353–54 (9th Cir.1984).

These factors lead the Court to conclude that the indictment should be dismissed with prejudice. First, defendant Osunde is charged with relatively minor violations of the Criminal Code. The alleged crimes do not involve physical violence or monetary loss by an aggrieved third party. In determining whether an offense is serious for purposes of dismissal with prejudice, the Court may consider the United States Parole Commission's grading of the offenses. *United States v. Smith,* 588 F.Supp. 1403, 1405 (D.Hawaii 1984). On a scale of one to eight, the Parole Commission classifies the defendant's violations as a two. 28 C.F.R. § 2.20 (offenses involving immigration, naturalization, and passports). The non-serious nature of the offenses weigh toward a dismissal with prejudice. Second, the 118–day delay between Osunde's arrest and indictment was entirely the fault of the government. He was in federal custody for the entire period. He was not represented by counsel until his arraignment, and there has been no intervening administrative or judicial proceeding that might have contributed to the delay. Responsibility for enforcement of the Speedy Trial Act is not the exclusive burden of the District Court. *United States v. Perez-Reveles,* 715 F.2d 1348, 1353 (9th Cir.1983). The government shares in this obligation, particularly with respect to the enforcement of § 3161(b). The decision to proceed via indictment or information following arrest is a matter of prosecutorial discretion. The government should bear the consequences of this unexcused delay between Osunde's arrest and indictment. Further, the length of the delay is an appropriate consideration in the determination of whether to dismiss with prejudice. *United States v. Russo,* 741 F.2d 1264, 1267 (11th Cir.1984). Despite the fact that it appears the government had no bad motive in holding Osunde without charge, the excessive delay of nearly four months militates in favor of a dismissal with prejudice. Finally, it appears to this Court that a dismissal with prejudice will not impede the administration of justice. If the defendant was convicted following re-indictment, he would be subject to deportation following any custodial sentence the Court might impose. If the defendant was to be acquitted, he would still be subject to deportation. The government had indi-

---

**2.** It appears to the Court that the defendant's alien status may impact on the analysis of the Speedy Trial Act's application to the present facts; more specifically, whether or not defendant's arrest was in connection with the charges he now faces. *See United States v. Reme,* 738 F.2d 1156 (11th Cir.1984); *United States v. Brooks,* 670 F.2d 148 (11th Cir.1982). Because the parties, however, did not address the issue in either the written briefs or oral arguments, this Court specifically declines to consider the issue in its ruling.

cated that should the dismissal be with prejudice, it intends to initiate exclusion proceedings. In short, the result will be the same; deportation is inevitable. Accordingly, dismissal with prejudice is the most expedient avenue by which to achieve the inevitable. The interests of justice would be served by such a dismissal because, although he may have committed the charged crimes, the defendant will not be allowed to continue enjoying the benefits of, and the protections concurrent with, residence in the United States.

## B. RULE 5 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE

■ In further support of the motion to dismiss the indictment, defendant contends that the government violated the provisions of Rule 5 of the Federal Rules of Criminal Procedure. At the outset this Court must note that Rule 5 and the Speedy Trial Act do not protect identical interests. The Act protects against lengthy delays between *arrests and indictment*. Rule 5, on the other hand, guarantees a defendant the right to be brought before a magistrate soon after being arrested. Rule 5(a), in pertinent part, states, "An officer making an arrest ... without a warrant shall take the arrested person *without unnecessary delay* before the nearest available federal magistrate...." Fed.R.Crim.P. 5(a) (emphasis added). The only case this Court has discovered which applies Rule 5 to a person detained by immigration authorities is *United States v. Sotoj-Lopez*, 603 F.2d 789 (9th Cir.1979). In *Sotoj-Lopez*, the defendant was apprehended by immigration authorities, and in the process a physical confrontation occurred in which Sotoj-Lopez assaulted his captors with a deadly weapon. The court held that pending immigration proceedings could not deprive defendant of the rights secured by Rule 5 with respect to the assault charges. *Id.* at 790. This Court has not discovered any contrary case law on the issue, nor has the government seen fit to even address the issue in its memoranda. Accordingly, the Court finds that defend-

ant Osunde was entitled, under Rule 5(a), to be taken before a magistrate without unnecessary delay on the criminal charges he now faces. The Court further finds that the passage of 106 days between the defendant's arrest and his first appearance before Magistrate Brazil was, without a doubt, a grossly unnecessary delay.

The prevalent application of Rule 5(a) is for the suppression of confessions or statements made by arrested individuals who were not brought before a magistrate in a timely fashion. In this regard the rule covers much the same ground as that covered by the *Miranda* rules and the *McNabb-Mallory* Rule. This Court has discovered no cases in which Rule 5(a) is viewed as a substantive right rather than a procedural/evidentiary tool. In light of the fact that the statute contains no reference to suppression of statement, however, this Court reads the statute to require exactly that which it expressly mandates; that the arrested person be taken before a judicial officer without unnecessary delay. Because this Court now holds that Rule 5(a) grants arrested persons a specific substantive right, the inquiry next turns to the appropriate remedy.

■ Although the Court cannot point to case law supporting dismissal, rather than suppression of evidence, for flagrant violations of Rule 5(a), such is not the case for violations of Rule 9(c)(1), a rule analogous to Rule 5(a). Rule 9(c)(1) requires that persons arrested pursuant to a warrant based on an indictment or information be brought before a magistrate without unnecessary delay. Rule 5(a) requires the same presentment before a magistrate for persons taken into custody on warrantless arrests or on warrants based on criminal complaints. *Compare* Fed.R.Crim.P. 5(a) *with* Fed.R.Crim.P. 9(c)(1). The predominate type of delay addressed by courts under both Rule 5(a) and Rule 9(c)(1) are delays of hours and days. *See, e.g., United States v. Halbert*, 436 F.2d 1226 (9th Cir. 1970). Although never imposed in this circuit, the remedial sanction of dismissal has been contemplated for flagrant unneces-

sary delays in bringing an arrested person before a magistrate. *See United States v. Jernigan*, 582 F.2d 1211, 1213–14 (9th Cir. 1978). The 106–day delay which occurred in the matter at bar would appear to present the appropriate facts warranting dismissal.

## III. CONCLUSION

By holding defendant Osunde for 106 days before bringing him before a magistrate, and by waiting 118 days to indict him, the government has committed serious and flagrant violations of both the Speedy Trial Act and Rule 5(a) of the Federal Rules of Criminal Procedure. Dismissal with prejudice will serve both to redress an obvious and egregious infringement upon the defendant's legally cognizable and protected liberty interests, as well as to serve notice on the government that such action cannot and will not be countenanced or condoned by the courts. Accordingly,

IT IS HEREBY ORDERED that the defendant's motion to dismiss the complaint and indictment with prejudice is GRANTED, and

IT IS FURTHER ORDERED that the complaint and indictment be, and are, DISMISSED WITH PREJUDICE.