UNITED STATES of America,

v.

Juan PEREZ–TORRIBIO, Defendant.

No. 97 Cr. 465 (SAS).

United States District Court,
S.D. New York.

Oct. 28, 1997.

**246**

Steven R. Peikin, Assistant United States Attorney, Southern District of New York, New York City, for U.S.

Jonathan P. Bach, Legal Aid Society, Federal Defender Division, New York City, for Defendant.

### OPINION AND ORDER

SCHEINDLIN, District Judge.

Defendant Juan Perez–Torribio has moved for an order pursuant to Fed. R. Cr. P. 9(c)(1) ("Rule 9(c)(1)"), 18 U.S.C. §§ 3161(b) and 3162(a)(1), and the Fifth and Sixth Amendments of the United States Constitution, to dismiss the Indictment against him with prejudice. For the following reasons, the motion is denied.

### I. Factual Background

The defendant has been charged in a one-count Indictment, under 18 U.S.C. § 3162, with illegally reentering the United States. He was arrested on February 3, 1995, on state charges for criminal possession of a controlled substance and held in custody until he was convicted on January 3, 1996. Upon conviction, he was sentenced to a term of 30 months to five years in prison. The Immigration and Naturalization Service ("INS") learned of his presence in this country as a result of this conviction. On April 2, 1997, while the defendant was still in state custody serving his sentence, the INS filed a detainer. The defendant was then indicted for the illegal reentry on May 15, 1997. On June 19, 1997, a United States District Judge issued a Writ of Habeas Corpus Ad Prosequendum, commanding the United States Marshals Service to transfer the defendant into federal custody to face prosecution on the Indictment. See Letter Opposing Motion to Dismiss ("Letter in Opposition"), dated September 29, 1997 at pp. 1–2. On June 24, 1997, a parole board granted the defendant parole status, and scheduled him for release on July 28, 1997. Two days later, on June 26, 1997, the defendant was found in possession of two "shanks." As a result, prison disciplinary charges were filed against the defendant, and a "rescission hearing" was scheduled for August 26, 1997.[1] Defendant's scheduled release date was stayed pending his rescission hearing. See Letter from Steven Peikin, Assistant United States Attorney, dated October 22, 1997. On or about August 11, 1997, the United States Marshals Service transferred the defendant to the Metropolitan Correctional Center. Defendant's rescission hearing was adjourned until February 28, 1998 because he was no longer in State custody. See Letter from Steven Peikin, Assistant United States Attorney, dated October 7, 1997. It was not until September 12, 1997, 32 days after the Marshals took the defendant into federal custody and 17 days after defendant's scheduled rescission hearing, that he appeared before a Magistrate Judge. At this initial appearance, the defendant was arraigned, counsel was appointed, and defendant was ordered detained pending trial. See Letter in Opposition at p. 2.

### II. Discussion

#### A. Rule 9(c)(1)

■ Rule 9 of the Federal Rules of Criminal Procedure governs the initial appearance of defendants arrested on warrants issued upon indictments or informations. Rule 9(c)(1) provides that the arresting officer "shall bring the arrested person without unnecessary delay before the nearest available federal magistrate judge."[2] Defendant argues that the Indictment must be dismissed because the government violated Rule 9(c)(1) when it unduly delayed bringing him before a

---

1. A rescission hearing is a quasi-judicial proceeding before the parole board to determine whether a prisoner's scheduled release to parole should be rescinded.

2. Although the defendant was taken into federal custody pursuant to a writ rather than an arrest warrant, the Government does not dispute the applicability of the timely presentment requirement.

Magistrate Judge for 32 days. The government concedes that the delay violated Rule 9(c)(1). It argues, however, that dismissal of the Indictment is not the appropriate form of relief for this delay. The government maintains that the appropriate remedy for this violation of Rule 9(c)(1) would be suppression of any prejudicial statements made during the period of delay.

■ The standards governing "unnecessary delay" are identical under Rules 9(c)(1) and 5(a).[3] *See United States v. Fullwood,* 86 F.3d 27, 30 (2d Cir.1996). Unnecessary delay violations of Rule 5(a) warrant suppression of evidence. *See id.; United States v. Colon,* 835 F.2d 27, 31 (2d Cir.1987); *United States v. DiGregorio,* 795 F.Supp. 630 (S.D.N.Y.1992). In *DiGregorio,* defendants were not brought before a Magistrate Judge for approximately five months after their arrests. However, during this five month period, defendants were only kept in custody for one 25 hour period. While, the government conceded that the five month delay violated Rule 5(a), it argued that the appropriate remedy for such a violation is suppression of evidence and not dismissal of the Indictment. The court agreed and denied defendants' motion to dismiss the Indictment.

These decisions implicitly hold that the remedy for an unnecessary delay should not bar prosecution altogether.[4] The remedy for any wrong done by the Marshals Service should not permit the defendant to escape punishment for a crime he may have committed. *See Brown v. Doe,* 2 F.3d 1236 at 1243 (2d Cir.1993). Rather, more appropriate remedies are available. The defendant can pursue a civil remedy by bringing a claim under 42 U.S.C. § 1983. *See id.* Additionally, if the defendant is convicted of the illegal reentry, the thirty-two day period of delay should be credited toward his federal sentence as time served.

**B.  18 U.S.C. §§ 3161(b) and 3162(a)(1)**

Defendant argues that dismissal is warranted under §§ 3161(b) and 3162(a)(1) of the Speedy Trial Act. Section 3161(b) requires that an indictment or information be filed within 30 days of the defendant's arrest. Failure to comply with this provision would warrant dismissal under § 3162(a)(1). In this case, however, the Indictment was filed before the defendant entered into federal custody. Thus, §§ 3161(b) and 3162(a)(1) are inapplicable.

■ Defendant, nevertheless, argues that while the Speedy Trial Act may not literally apply, the policy considerations underlying the Speedy Trial Act justify dismissal of the Indictment. According to the defendant, a literal reading of the statute creates a loophole whereby a defendant could be held for a lengthy period of time, without being advised of the charges against him or his right to counsel, as long as an Indictment had been previously filed. The language of § 3161(b) lends weight to the "loophole" argument because it provides that a defendant must be brought to trial within seventy days of either the date when the Indictment was filed or the date when the defendant appeared before a judicial officer, whichever last occurs. As a result, § 3161(b) is not violated where a trial commences within seventy days from defendant's appearance before a judicial officer, even if the time between filing the Indictment and presentment before the judicial officer exceeds seventy days. This potential anomaly occurs because the statute calculates the seventy day period from the later of the two events.

■ Defendant asks the court to construe the statute so that it creates a thirty day period within which a defendant must be

---

**3.** Rule 5(a) of the Federal Rules of Criminal Procedure provides that "an officer making an arrest under a warrant issued upon a complaint or ... without a warrant shall take the arrested person without unnecessary delay before the nearest available magistrate judge ..."

**4.** Defendant relies on cases decided in the Ninth Circuit for the proposition that dismissal is appropriate; however, these cases are distinguish-

able. In *United States v. Osunde,* 638 F.Supp. 171 (N.D.Ca.1986), the court dismissed an Indictment because the delay directly violated the 30–day time limit set forth in 18 U.S.C. §§ 3161(b) and 3162(a). The court in *United States v. Jernigan,* 582 F.2d 1211 (9th Cir.1978), stated in dicta that while dismissal might be an appropriate remedy in certain circumstances, it was too harsh in this case.

arraigned after Indictment, thus parsing the post-Indictment period into two segments; (1) an Indictment-to-arraignment period of no more than thirty days and (2) an arraignment-to-trial period. *See* Letter in Further Support of Motion to Dismiss at 5, 6 ("Letter in Support"). However, this reading violates both the plain language of the statute and Congressional intent. The plain language of the statute does not create a 30 day Indictment-to-arraignment period. Additionally, Congress specifically rejected a parsing approach when it amended the Speedy Trial Act in 1979 and merged a previous ten day Indictment-to-arraignment period and the 60 day arraignment-to-trial period into a single 70 day Indictment-to-trial period. *See* 18 U.S.C. § 3161(b). *See also* H.R.Rep. No. 96–390, at 1 (1979), reprinted in 1979 U.S.C.C.A.N., vol. 2 at 805. This action leads to the conclusion that defendant's suggested reading of the Speedy Trial Act must be rejected. It is not within the province of this court to rewrite the plain language of the Speedy Trial Act, particularly in a manner which has been specifically rejected by Congress. *See Commissioner of Internal Revenue v. Lundy,* 516 U.S. 235, 116 S.Ct. 647, 656, 133 L.Ed.2d 611 (1996) ("we are bound by the statute as it is written ... we are not at liberty to rewrite the statute because we might deem its effects susceptible of improvement") (quotations omitted). Rather, defendant is forced to seek a remedy for the delay in the Fifth and Sixth Amendments of the Constitution.

### C. Fifth and Sixth Amendments

■ Dismissal of an Indictment for Fifth Amendment violations has been reserved for the rarest and most extreme cases of governmental misconduct; namely where the conduct violates that " 'fundamental fairness shocking to the universal sense of justice.' " *United States v. Russell,* 411 U.S. 423, 432, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366 (1973) (quoting *Kinsella v. United States ex rel. Singleton,* 361 U.S. 234, 246, 80 S.Ct. 297, 303, 4 L.Ed.2d 268 (1960)). *See also United States v. Lovasco,* 431 U.S. 783, 790, 97 S.Ct. 2044, 2048–49, 52 L.Ed.2d 752 (1977) (18–month preindictment delay did not violate the Fifth Amendment because it did not offend our fundamental concept of justice). Here, Torribio has failed to demonstrate any fundamental unfairness because he has not shown that he was prejudiced by the delay.[5]

■ Similarly, the delay did not violate defendant's Sixth Amendment rights. In *Barker v. Wingo,* 407 U.S. 514, 522, 92 S.Ct. 2182, 2187–88, 33 L.Ed.2d 101 (1972), the Supreme Court directed a trial court to consider four factors when analyzing a motion to dismiss an Indictment on Sixth Amendment speedy trial grounds: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of the speedy trial right, and (4) prejudice to the defendant. The Supreme Court further stated that "[t]he length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Id.* at 530, 92 S.Ct. at 2192. The 32 day post-Indictment delay is not "presumptively prejudicial," particularly because it has not caused a violation of the defendant's right to a trial within the time limits specified by the Speedy Trial act.[6]

---

5. Assuming a favorable outcome at his rescission hearing, the earliest Torribio could have been released from state custody was August 26, 1997. The Marshals brought the defendant before a Magistrate Judge on September 12, 1997. Therefore, defendant can only argue that he was subjected to a maximum of 17 days of potentially prejudicial incarceration. However, this argument must fail because the INS would have taken him into custody pursuant to the detainer which it filed on April 2, 1997. As a result, the defendant would have been in custody during the 17 day period of potential prejudice. I reach this conclusion because Torribio would either have been in INS custody pending deportation or the Marshals would have taken him into custody at the INS facility rather than the state facility. In either event, defendant was not prejudiced by the delay.

6. *See United States v. Comosona,* 848 F.2d 1110, 1114 (10th Cir.1988) (three month post-indictment delay was not presumptively prejudicial); *compare* with *United States v. Blanco,* 861 F.2d 773, 778 (2d Cir.1988) (ten year delay between indictment and beginning of trial constituted a presumptively prejudicial delay).

While defendant's motion to dismiss the Indictment must be denied, the court does not condone the government's apparent indifference to the requirements of Rule 9(c)(1). The 32 day delay in this case clearly violated Rule 9(c)(1) and the only explanation for the delay is government oversight. We all have a right to expect more care from our prosecuting officials. The court firmly believes that such delays are not likely to occur again.

## III. *Conclusion*

Accordingly, the defendant's motion to dismiss the Indictment is denied.