**UNITED STATES of America**

v.

**Sonia Elisa Felix FERNANDEZ, Defendant.**

**No. EP–04–CR–2653(3)–PRM.**

United States District Court, W.D. Texas, El Paso Division.

July 6, 2006.

Joseph H. Gay, Jr., Assistant U.S. Attorney, San Antonio, TX, Stephen Gregory Garcia, Assistant U.S. Attorney, El Paso, TX, for United States of America.

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND DENYING DEFENDANT'S MOTION TO SUPPRESS

MARTINEZ, District Judge.

On this day, the Court considered Defendant Sonia Elisa Felix Fernandez's ("Defendant") "Motion to Dismiss" ("Motion" or "Motion to Dismiss"), filed on May 25, 2006, the Government's "Response to Defendant's Motion to Dismiss" ("Response"), filed on June 5, 2006, and Defendant's "Reply to Government's Response to Motion to Dismiss" ("Reply"), filed on June 16, 2006 in the above-captioned cause. Within Defendant's Motion to Dismiss, Defendant also presents a "Motion to Suppress for Outrageous Government Conduct, Violation of Sixth Amendment Right to Counsel, Violations of Fed. R.Crim.P. 4, 5, and 9, and Want of *Miranda* Warnings" ("Motion to Suppress"). Motion 18. After careful consideration, the Court is of the opinion that Defendant's Motion to Dismiss and Motion to Suppress should be denied for the reasons that follow.

## I. FACTUAL AND PROCEDURAL BACKGROUND

By a six count sealed indictment filed on December 1, 2004,[1] a Grand Jury charged Defendant with two of the six counts: (1) conspiracy to possess a controlled substance with intent to distribute in violation of 21 U.S.C. §§ 846, 841(a)(1) and (2) conspiracy to import a controlled substance in violation of 21 U.S.C. § 963. The indict-

---

1. A magistrate judge ordered that the indict- ment be unsealed on December 9, 2004.

ment alleges that the controlled substance was cocaine. Defendant was arrested and taken into custody by FBI agents on March 9, 2006, and appeared before a magistrate judge at the El Paso County Jail on March 11, 2006. *Id.* at 2, 11. Defendant argues that the indictment should be dismissed due to outrageous government conduct, violations of her Sixth Amendment right to counsel, and violations of Federal Rules of Criminal Procedure 4, 5, and 9. Defendant alleges that the outrageous conduct and violations occurred during the days between March 9, 2006, when Defendant was initially taken into custody, and March 11, 2006, when Defendant was first taken before a judge and read her rights. Specifically, Defendant alleges that the Government kidnapped her and forced her to stay in a motel room, where FBI agents threatened her and her family in order to coerce her into cooperating with the FBI. *Id.* at 4, 5, 10.

The Government does not provide factual affidavits to counter Defendant's allegations in its Response, but rather, argues that even if Defendant's allegations are true, dismissal of the indictment is unwarranted. Response 15. Therefore, in lieu of holding an evidentiary hearing, the Court, in its consideration of Defendant's Motion, will assume *arguendo* that all of Defendant's allegations are true.

## II. DISCUSSION

### A. Outrageous Government Conduct Defense

■ "[A] defendant who asserts the defense of outrageous government conduct has an extremely high burden of proof." *United States v. Asibor,* 109 F.3d 1023, 1039 (5th Cir.1997). Defendant argues that dismissal of the indictment is warranted due to outrageous government conduct. Defendant, however, misconstrues the nor-

mal application of the outrageous government conduct doctrine. Outrageous government conduct is typically asserted as a defense against an indictment or conviction. An indictment may be dismissed on the basis of outrageous government conduct when "governmental *participation* [is] so outrageous or fundamentally unfair as to ... move the courts ... to hold that the defendant was 'entrapped' as a matter of law." *United States v. Graves,* 556 F.2d 1319, 1322 (5th Cir.1977) (quoting *United States v. Quinn,* 543 F.2d 640 (8th Cir. 1976)) (emphasis added).

■ The outrageous government conduct defense originated in a Supreme Court case wherein the defendant asked the Court to reconsider the entrapment defense, and "adopt a rigid constitutional rule that would preclude any prosecution when it is shown that the criminal conduct would not have been possible had not an undercover agent supplied an indispensable means to the commission of the crime...." *United States v. Russell,* 411 U.S. 423, 431, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973) (internal quotations omitted). The Court refused to adopt such a rule, but allowed that "we may someday be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction." *Id.* at 431–32, 93 S.Ct. 1637. However, such a dismissal "is proper only in the rarest circumstances" and the defendant must prove "both substantial government involvement *in the offense* and a passive role by the defendant." *United States v. Gutierrez,* 343 F.3d 415, 421 (5th Cir.2003) (citations and internal quotations omitted) (emphasis added).

■ Defendant does not claim that the Government participated in the alleged of-

fenses with which she is charged, but rather that its post-arrest conduct was so outrageous as to warrant dismissal. However, the outrageous government conduct defense does not normally involve the post-arrest conduct of the government; "the outrageous-conduct defense requires not only government overinvolvement in the charged crime but a passive role by the defendant as well. A defendant who actively participates in the crime may not avail himself of the defense." *United States v. Arteaga,* 807 F.2d 424, 427 (5th Cir.1986). Defendant claims that she is unable to provide the Court with any cases in which a court dismissed an indictment based on post-arrest outrageous government conduct because "no government agents have heretofore so brazenly ignored their constitutional and rule-mandated obligations." Reply 3. A more likely explanation for the lack of any similar cases is that the defense is traditionally available only when government agents' participation *in the offense with which a defendant is charged* is so outrageous as to constitute entrapment as a matter of law. *Graves,* 556 F.2d at 1322.

### B. Outrageous Government Conduct in Securing Custody

 While all the cases that Defendant cites as supporting authority involve outrageous government conduct in the charged offense, the Court recognizes that government conduct may possibly lead to a dismissal of the indictment if "the government conduct in securing custody of the defendant is shocking and outrageous." *United States v. Wilson,* 732 F.2d 404, 411 (5th Cir.1984). The traditional remedy for pre-trial illegal government conduct is the exclusionary rule, which serves to deny "the government the fruits of its exploitation of any deliberate and unnecessary lawlessness on its part." *United States v. Toscanino,* 500 F.2d 267, 275 (2d Cir.1974). The Second Circuit found the exclusionary rule an insufficient remedy, however, when government agents kidnapped a defendant from his home in Uruguay and tortured him for three weeks in Brazil before bringing him into the United States.[2] *Id.* at 279. The Second Circuit reasoned that "when an accused is kidnapped and forcibly brought within the jurisdiction, the court's acquisition of power over his person represents the fruits of the government's exploitation of its own misconduct." *Id.*

The Fifth Circuit, however, recognizes that the traditional rule is that "the power of a court to try a person for a crime [is] not impaired by the fact that the person was forcibly brought within the court's jurisdiction." *Wilson,* 732 F.2d at 410 (citing *Ker v. Illinois,* 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421 (1886)). Accordingly, the Fifth Circuit has limited indictment dismissals to "those situations involving torture, brutality, and similar outrageous conduct." *United States v. Chapa–Garza,* 62 F.3d 118, 121 (5th Cir.1995).

In this case, Defendant went to the Bridge of the Americas after the American Consulate in Juarez informed her that doing so would enable her to obtain a visa more quickly. Motion 1. FBI agents took custody of Defendant at the International Port of Entry. *Id.* at 2. At worst, Defendant "was the victim of a nonviolent trick," thus, the Court "should not dismiss the indictment on a due process basis." *Wil-*

---

**2.** The torture alleged in the *Toscanino* case involved kicking, beating, flushing alcohol into the defendant's eyes and nose, and attaching electrodes to the defendant's earlobes, toes and genitals. "Jarring jolts of electricity were shot throughout his body, rendering him unconscious for indeterminate periods of time...." 500 F.2d at 270 (internal quotations omitted).

*son,* 732 F.2d at 411. The alleged governmental misconduct occurred once Defendant had presented herself voluntarily to the United States authorities. Accordingly, the exclusionary rule is sufficient to "insure that an ultimate conviction [will] not rest on governmental illegality." *Id.*

### C. Sixth Amendment Right to Counsel

■ Defendant claims that the Government violated her Sixth Amendment right to counsel by interrogating her after her arrest, before taking her to appear before a judge, during the two days she spent with FBI agents in a motel room. Because Defendant was under indictment during the interrogation, she had the right to have assistance of counsel. *Patterson v. Illinois,* 487 U.S. 285, 290, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988). Defendant concedes that "[i]f a Sixth Amendment violation occurs, generally the remedy is to suppress the evidence, not to dismiss the indictment." Motion 16. Defendant argues, however, that because the Government did not obtain any incriminating evidence against her, there is nothing to suppress, rendering the exclusionary rule an unavailable sanction. *Id.*

■ Defendant's assertion that the Government did not obtain any evidence against her does not strengthen her argument that the indictment should be dismissed. If no evidence was obtained, then there cannot exist even a threat of prejudice from the alleged Sixth Amendment violation; "absent demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate, even though the violation [of the Sixth Amendment right to counsel] may have been deliberate." *United States v. Morrison,* 449 U.S. 361, 366, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981).

### D. Violations of Federal Rules of Criminal Procedure 4, 5, and 9

■ Defendant makes a similar argument about the alleged violations of the Federal Rules of Criminal Procedure, namely, that suppression of the evidence is an inappropriate remedy because no evidence was obtained to suppress. Motion 18. Defendant claims that the Government violated Federal Rule of Criminal Procedure 4 ("Rule 4"), which, in part, provides for the execution or service and return of a warrant on a complaint, FED. R.CRIM.P. 4, Federal Rule of Criminal Procedure 5 ("Rule 5"), which states that "a person making an arrest within the United States must take the defendant without unnecessary delay before a magistrate judge," FED.R.CRIM.P. 5, and Federal Rule of Criminal Procedure 9 ("Rule 9"), which provides that Rules 4 and 5 must be followed for warrants issued for a defendant named in an indictment. FED.R.CRIM.P. 9.

Defendant argues that the alleged violations of Rules 4, 5, and 9 require dismissal of the indictment "to preserve judicial integrity and to deter further illegal government misconduct." Motion 18. Notably, Defendant does not provide any specific allegations of how the Government violated Rule 4. *Id.* Furthermore, Defendant asserts in her Reply that her "seizure was ostensibly executed pursuant to an arrest warrant." Reply 2. Defendant's conclusory allegations of a Rule 4 violation do not justify dismissal of the indictment.

■ Defendant also claims that the alleged Rule 5(a) violation justifies dismissal of the indictment. Motion 18. The Fifth Circuit has stated that "[w]here a violation of Rule 5(a) is shown, the appropriate remedy is the suppression of any evidence obtained as a result of the delay." *United States v. Cardenas,* 410 F.3d 287, 293 (5th Cir.2005) (citing *United States v. Causey,* 835 F.2d 1527, 1529 (5th Cir.1988)). The

Ninth Circuit, when considering the appropriate remedy for a violation of Rule 5(a) where no evidence was obtained, rendering the exclusionary rule an inapplicable sanction, found that the motion to dismiss the indictment was "correctly denied."[3] *Bayless v. United States*, 381 F.2d 67, 71 (9th Cir.1967).

Defendant has not provided the Court with any case law to support her argument that violations of Rules 4, 5, or 9 warrant dismissal of the indictment. The Court is aware of only one case in which a court dismissed an indictment for a violation of Rule 5(a), and in that case, the defendant was held in custody for 106 days prior to appearing before a judge, and for 118 days prior to being indicted. *United States v. Osunde*, 638 F.Supp. 171, 173 (N.D.Cal. 1986). Furthermore, other courts have declined to follow the *Osunde* court, and refused to dismiss indictments based on violations of Rule 5(a). *See, e.g., United States v. DiGregorio*, 795 F.Supp. 630, 634 n. 13 (S.D.N.Y.1992) (denying motion to dismiss indictment where defendants were not brought before a judge until five months after their arrests); *United States v. Dyer*, 325 F.3d 464, 470 n. 2 (3d Cir. 2003) ("[E]ven if the government had violated [Rule 5(a)], the remedy for such a violation is not dismissal of the indictment."). Therefore, the Court concludes that dismissal of the indictment is an inappropriate remedy for the alleged Rule 5(a) violation.

### E. Motion to Suppress

Defendant argues that any evidence obtained by the Government during the period from March 9, 2006 to March 11, 2006 should be suppressed due to the alleged violations asserted in her Motion to Dismiss. Motion 18. However, Defendant bases much of the argument in her Motion to Dismiss on the fact that the exclusionary rule is an inappropriate sanction because no incriminating evidence was obtained. *Id.* at 16, 18, 19. Furthermore, "the Government has agreed to abstain from using Defendant's statements [obtained during the relevant period] against her in its case-in-chief." Response 15. Because there is no evidence to suppress, whether due to the Government's voluntary election not to offer any evidence obtained during the relevant period or the non-existence of any incriminating evidence as alleged by Defendant, the Court is of the opinion that Defendant's Motion to Suppress should be denied.

### III. CONCLUSION

After careful consideration of the parties' arguments, submissions and controlling case law, the Court finds that Defendant's Motion to Dismiss and Motion to Suppress should be denied.

Accordingly, **IT IS ORDERED** that Defendant's Motion to Dismiss and Motion to Suppress (Docket No. 164) are **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Request for Evidentiary Hearing (Docket No. 163) is **DENIED.**

---

**3.** Dismissal of the indictment is not an appropriate remedy for alleged Rule 5 violations because "Rule 5 does not create a substantive right for which violation warrants dismissal...." *United States v. Savchenko*, 201 F.R.D. 503, 507 (S.D.Cal.2001). "[T]he only remedy for the violation would be the suppression of confessions or statements." *Id.* (citing *Bayless*, 381 F.2d at 70–71).