**UNITED STATES of America**

v.

**Jerome WILKERSON.**

**No. 97–21–CR–ORL–22B.**

United States District Court,
M.D. Florida,
Orlando Division.

Feb. 2, 1998.

Order Denying Reconsideration
Feb. 26, 1998.

Clarence William Counts, Jr., Federal Public Defender's Office, Orlando, FL, for Jerome Wilkerson, defendant.

John Thomas Gibbs, U.S. Attorney's Office, Orlando, FL, for U.S.

### ORDER

CONWAY, District Judge.

This cause comes before the Court for consideration of Defendant Jerome Wilkerson's Motion to Dismiss Based on Violations of Speedy Trial Act (Doc. 13) and the Government's Response (Doc. 14).

On February 6, 1997, the Government indicted Defendant pursuant to 18 U.S.C. §§ 922(g)(1) and 924(e). Defendant was arrested and brought before U.S. Magistrate Judge William C. Sherrill in the Northern District of Florida on October 10, 1997. At Defendant's initial appearance, Judge Sherrill appointed counsel and ordered that Defendant be detained pending trial. That same day, because Defendant waived his right to removal proceedings, the U.S. Mar-

shals Service was commanded to take custody of Defendant and transport him to the Middle District of Florida. Defendant arrived at the Lake County Correctional Facility in the Middle District of Florida on October 20, 1997. More than two months later, on December 23, 1997, Defendant initially appeared before U.S. Magistrate Judge David A. Baker. Judge Baker appointed counsel and set trial for February 2, 1998.

The Speedy Trial Act, 18 U.S.C. § 3161, provides, in pertinent part:

(c)(1) In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date ... of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

■ Defendant argues that his appearance before Judge Sherrill on October 10, 1997, triggered the seventy day window for commencing trial. The Government responds that the speedy trial clock did not begin ticking until December 23, 1997, the day the Defendant first appeared before a judicial officer in the Middle District of Florida.[1] If the Defendant is correct, the seventy day time period expired on December 29, 1997. Hence, the critical question before the Court is when the speedy trial clock commenced running.

Read literally and in isolation, § 3161(c)(1) would seem to support the Government's position that the first appearance before a judicial officer in this district was the triggering event. However, reading the statute as a whole and in conjunction with Rules 5 and 9, Fed.R.Crim.P., *infra.*, the Court concludes that the Government's position is untenable. Accepting the Government's position yields the extreme result that the Government essentially has no obligation to bring a defendant before a judicial officer in this district in a timely manner. This would result in a potentially unlimited delay in bringing a defendant before a Middle District judicial officer. Such a delay, of course, would also delay the Court in appointing counsel and advising the defendant of his rights.

In the Court's view, there are only two potentially triggering dates in this case which would be consistent with the obvious rationale underlying the Speedy Trial Act—to afford a criminal defendant a speedy trial.[2] The first is October 10, 1997, the date the Defendant first appeared in the Northern District of Florida and waived removal. The second possibility is that the time began to run from the date the Defendant should have appeared before a judicial officer in this district, which would have been no later than October 24, 1997.[3] Under either scenario, the seventy day time limit for bringing the Defendant to trial has expired.

Support for the first possibility is found in the case of *United States v. Jervey*, 630 F.Supp. 695 (S.D.N.Y.1986). In *Jervey*, the district court decided the issue of whether the transportation of the defendant after an order of removal was timely. Citing 18 U.S.C. § 3161(h)(1)(G)-(H),[4] the court stated that

---

1. In support of its opposition, the Government relies on *United States v. O'Bryant*, 775 F.2d 1528 (11th Cir.1985). The defendant in *O'Bryant* was not transported to the Middle District of Florida immediately upon arrest due to state charges pending against him in another jurisdiction. In the instant case, Defendant was not held on state charges and was timely transported to the Middle District. Therefore, *O'Bryant* is not applicable to the instant situation.

2. The Court has been unsuccessful in locating any Eleventh Circuit authority bearing on this question.

3. The Court has been unable to find any case law supporting the proposition that the speedy trial

time should not have begun to run when the first appearance should have occurred.

4. 18 U.S.C. § 3161(h)(1)(G)-(H) provides:

(h) The following periods of delay shall be excluded ... in computing the time within which the trial of any such offense must commence:
(1) Any period of delay resulting from other proceedings concerning the defendant, including but not limited to—
(G) delay resulting from any proceeding relating to the ... removal of any defendant from another district under the Federal Rules of Criminal Procedure;
(H) delay resulting from transportation of any defendant from another district ... ex-

"[o]nce defendant waived his right to removal proceedings and the Magistrate issued the Removal Warrant, the 'Speedy Trial Clock' began again to accrue the days." *Id.* at 697. Although the *Jervey* court considered issues not involved in the instant case—the untimely transportation of the defendant after an order of removal—the Court nevertheless finds the reasoning of *Jervey* persuasive in determining when the speedy trial clock commences.

Under this scenario, the speedy trial time would begin running as soon as the Defendant waived removal, but the 10 days travel time would be excluded. Even with the 10 day exclusion, the 70 day period has expired.[5]

Regarding the second possibility, in which the speedy trial clock commences at the time when the first appearance should have occurred, the response filed by the Government presents no reason for the 64–day delay in bringing Defendant before Judge Baker. Additionally, the Court is unaware of any circumstance that would have prevented the Defendant from being brought before a judicial officer of this Court within 24 hours of his arrival in the district. Within 10 days of Judge Sherrill's Order of Removal, Defendant was delivered on a Monday to the facility that is used by the U.S. Marshals Service for housing prisoners whose cases are to be tried in the Orlando Division. The Marshals Service makes daily transportation runs between the Orlando courthouse and the Lake County Jail. Accordingly, there is absolutely no reason why the Defendant could not have been brought before a judicial officer the day after his arrival in this district, or certainly by the end of that week. Hence, at the latest, the Defendant should have been brought before a judicial officer in this district on October 24, 1997. Since trial did not commence within seventy days of that date, a Speedy Trial Act violation has occurred.

Based on the foregoing, the Court determines that the Speedy Trial Act has been violated; the Defendant is entitled to dismissal of the indictment against him.

Rules 5(a) and 9(c)(1), Fed.R.Crim.P., are also relevant to the instant situation. In pertinent part, Rule 5(a), which governs initial appearances before magistrate judges, provides:

> an officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant shall take the arrested person without unnecessary delay before the nearest available federal magistrate judge . . . .

 Similarly, Rule 9(c)(1), which addresses execution of arrest warrants resulting from indictment, states:

> [t]he officer executing the warrant shall bring the arrested person without unnecessary delay before the nearest available federal magistrate judge . . . .

The Court finds that the passage of 64 days between Defendant's arrival in the district and his first appearance before Judge Baker constitutes unnecessary delay under these rules. Accordingly, the Court must determine an appropriate remedy.

Violations of Rules 5(a) and 9(c)(1) usually result in suppression of confessions or statements made by arrested individuals who were not brought before a magistrate in a timely fashion. The remedy of dismissal has not been imposed in this Circuit. *See, e.g., United States v. Purvis,* 768 F.2d 1237 (11th Cir.1985) (finding that a five-day delay was not unnecessary delay, the court did not decide the issue of whether dismissal would be an appropriate remedy), *cert. denied,* 475 U.S. 1011, 106 S.Ct. 1186, 89 L.Ed.2d 302 (1986). However, it has been imposed or contemplated by other courts. *See United States v. Jernigan,* 582 F.2d 1211 (9th Cir.) (concluding that the decision to dismiss the indictment would be too drastic a remedy where only three days had passed before defendant appeared before a magistrate), *cert. denied,* 439 U.S. 991, 99 S.Ct. 592, 58

---

cept that any time consumed in excess of ten days from the date an order of removal or an order directing such transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable.

**5.** Inasmuch as § 3161(h)(1)(G)-(H) exclude the time a defendant is being transferred from another district, they suggest that the speedy trial clock commenced when the Defendant waived his right to a removal hearing.

L.Ed.2d 666 (1978); *United States v. Osunde*, 638 F.Supp. 171 (N.D.Cal.1986) (dismissing the indictment because defendant was held for 106 days before bringing him before a magistrate). The Court believes that dismissal is the only appropriate remedy for the Government's conduct in the instant case because of the resulting delay in the appointment of counsel and in bringing the Defendant to trial. Accordingly, the indictment is due to be dismissed based on violations of Rules 5(a) and 9(c)(1), Fed.R.Crim.P.

■ The remaining issue is whether the dismissal should be with or without prejudice. In deciding this issue, the Court must consider the following three factors: (1) the seriousness of the offense; (2) the facts and circumstances which led to the dismissal; and (3) the impact of a reprosecution on the administration of justice. 18 U.S.C. § 3162.

As to the first factor, the Defendant is charged with possession of a firearm by a convicted felon. He was charged with the same offense in state court. The state subsequently dismissed the charge. While the possession of a firearm by a convicted felon is always a serious offense, this factor does not outweigh the lack of justification for violating the speedy trial rights of the Defendant and the public.

In the particular circumstances presented in this case, the second factor is most critical, and alone justifies a dismissal with prejudice. Under the circumstances of this case, the 64 day delay is not only unreasonable; it is unconscionable. As previously noted, the Government did not present any reason whatsoever for its failure to bring the Defendant before a judicial officer in a timely fashion. The Middle District's speedy trial plan, entitled "Plan to Minimize Undue Delay and Further Prompt Disposition of Criminal Cases," adopted by this Court pursuant to 18 U.S.C. § 3165, requires the United States Attorney's Office to monitor speedy trial time limits to ensure compliance with the Speedy Trial Act. The Government also has the responsibility under Rules 5 and 9 to see that a defendant is brought before a judicial officer upon arrival in this district. Therefore, the Government's conduct in not bringing Defendant before a magistrate for 64 days strongly supports a dismissal with prejudice.

Regarding the third factor, the Court determines that a reprosecution of this Defendant would undermine the policies behind the Speedy Trial Act, as well as Rules 5 and 9, and thus would compromise justice. Hence, this factor also supports dismissal with prejudice.

Through its conduct in the instant case, the Government has demonstrated an inability to fulfill its responsibilities to ensure that defendants' rights are provided promptly. Even though a dismissal with prejudice is severe, this Court must enforce the policies behind the Speedy Trial Act, and Rules 5 and 9, or else risk that these safeguards might become meaningless. Only the most severe sanction will provide the Defendant with a meaningful remedy as well as ensure that other individuals' rights are not violated in the future. Accordingly, to sanction the Government for its inexcusable conduct and to protect other persons in federal custody from becoming victims of the Government's lack of efficiency, the Court concludes that the strict sanction of dismissal with prejudice is the only appropriate remedy.

Based on the foregoing, it is ORDERED as follows:

1. Defendant's Motion to Dismiss (Doc. 13), filed January 27, 1998, is GRANTED.

2. This case is DISMISSED WITH PREJUDICE.

### *ORDER*

This cause comes before the Court for consideration of the Government's Motion to Reconsider Court's Order (Doc. 17) and Defendant's Response (Doc. 18). The Government seeks reconsideration of the Court's Order dated February 2, 1998, dismissing the charges against Defendant with prejudice (Doc. 16).

On January 27, 1998, Defendant filed a Motion to Dismiss Based on Violation of Speedy Trial Act. In that motion, Defendant sought dismissal of the charges with prejudice. The Government responded on January 28, 1998, arguing merely that the Speedy Trial Act had not been violated. The Gov-

ernment did not give reasons for the delay in bringing Defendant to trial and did not argue that the case should be dismissed without prejudice should the Court decide that the Speedy Trial Act had been violated. On February 2, 1998, the Court found that the Speedy Trial clock began to run either on October 10, 1997, the day the Defendant initially appeared in the Northern District of Florida, or on October 24, 1997, the day the Defendant should have appeared before a judicial officer in the Middle District of Florida. The Court stated that under either scenario, the Speedy Trial clock had expired.

In discussing whether the dismissal should be with or without prejudice, the Court recognized that the offense was serious, but ultimately found that the facts and circumstances presented in this case justified a dismissal with prejudice. The Court noted that the United States Attorney's Office has the responsibility to monitor the speedy trial time and to bring a defendant before a judicial officer upon arrival in the district. The Court stated that:

> Through its conduct in the instant case, the Government has demonstrated an inability to fulfill its responsibilities to ensure that defendants' rights are provided promptly. Even though a dismissal with prejudice is severe, this Court must enforce the policies behind the Speedy Trial Act, and Rules 5 and 9, or else risk that these safeguards might become meaningless. Only the most severe sanction will provide the Defendant with a meaningful remedy as well as ensure that other individuals' rights are not violated in the future. Accordingly, to sanction the Government for its inexcusable conduct and to protect other persons in federal custody from becoming victims of the Government's lack of efficiency, the Court concludes that the strict sanction of dismissal with prejudice is the only remedy.

■ The Government now moves for reconsideration of the dismissal with prejudice. In its motion, it explains why the Defendant

was not brought before a judicial officer immediately upon arriving in this District and then argues why the case should not be dismissed with prejudice.

■ Preliminarily, for the Court to reconsider its earlier Order, the Government must do more than "relitigate that which has already been considered by the Court and found lacking." *Government Personnel Serv., Inc. v. Government Personnel Mut. Life Ins. Co.,* 759 F.Supp. 792, 793 (M.D.Fla. 1991), *aff'd,* 986 F.2d 507 (11th Cir.1993). Motions for reconsideration generally serve a very narrow function; they are designed solely to correct manifest errors of law or fact or to present newly discovered evidence that could not have been discovered at the time of the original motion. *See* Rule 60, Fed.R.Civ.P.; *Publishers Resource, Inc. v. Walker–Davis Publications, Inc.,* 762 F.2d 557, 561 (7th Cir.1985); *In re Costello,* 136 B.R. 296, 299 (M.D.Fla.1992). In addition, facts and arguments that should have been raised in the first instance are not appropriate grounds for a motion for reconsideration. *See Villaflores v. Royal Venture Cruise Lines, Ltd.,* No. 96–2103, 1997 WL 728098 *2 (M.D.Fla.1997).[1]

In this case, the Government has not produced newly discovered evidence or shown manifest errors of law. Rather, the Government explains facts and circumstances that should have been raised in its first response. However, even if the circumstances had been raised in its previous response, the conduct of the U.S. Attorney's Office still requires a dismissal with prejudice.

As noted in the Court's prior Order, the Court must consider the following three factors in determining whether a dismissal should be with or without prejudice: (1) the seriousness of the offense; (2) the facts and circumstances which led to the dismissal; and (3) the impact of a reprosecution on the administration of justice. 18 U.S.C. § 3162.

In its motion, the Government argues that these factors do not justify a dismissal with

---

1. No Rule of Criminal Procedure addresses motions for reconsideration. However, case law recognizes the Court's inherent right to reconsider its prior rulings. *See U.S. v. Vicaria,* 963 F.2d 1412, 1413–14 (11th Cir.1992) (citing *U.S. v. Dieter,* 429 U.S. 6, 8–9, 97 S.Ct. 18, 50 L.Ed.2d 8 (1976)).

prejudice in the instant case. As to the first factor, the Government asserts that because the Defendant was charged with possession of a firearm by a previously convicted felon, the offense is serious. Regarding the second factor, the Government contends that it acted in good faith and the "delay was the result of administrative lapses in notifying the proper prosecutive parties when the defendant was transported into the Middle District of Florida." As to the impact of reprosecution on the administration of justice, the Government contends that the Defendant was not prejudiced in his time to prepare for trial. Finally, the Government asserts that because there has been no pattern of neglect on its part, a dismissal with prejudice is unwarranted to ensure future compliance with the Speedy Trial Act.

The Court recognizes that the offense committed by the Defendant is serious; however, the facts and circumstances of this case and the impact of reprosecution on the administration of justice support a dismissal with prejudice. As to the facts and circumstances of this case, there is no dispute that the U.S. Attorney's Office failed to bring the Defendant before a judicial officer for his initial appearance for 64 days. In addition, the U.S. Attorney's Office has not presented facts that would excuse it from its obligation to ensure that defendants are brought before the Court in a timely manner. Therefore, the U.S. Attorney's Office has not presented facts or circumstances that would justify reversing the Court's dismissal with prejudice.

■ As to the impact of a reprosecution on the administration of justice, "[t]his factor requires the district court to consider whether the delay has prejudiced the defendants and whether dismissal with prejudice is warranted to ensure future compliance with the Act." *U.S. v. Maloy*, 835 F.Supp. 1373, 1378

(M.D.Fla.1993) (citations omitted). The Court finds that a dismissal with prejudice is warranted to ensure future compliance with the Act.

As the Court noted in its prior Order and reiterates now, the U.S. Attorney's Office is the agency responsible for monitoring the speedy trial clock and bringing a defendant before a judicial officer for an initial appearance. However, in this case, the U.S. Attorney's Office has not recognized its responsibility for the delay in arranging Defendant's initial appearance and in monitoring his speedy trial clock. Rather than acknowledge its obligation, the U.S. Attorney's Office attempts to shift blame for the delay to other agencies. In that regard, the U.S. Attorney's Office places blame on the Clerk's office, the U.S. Marshals Service,[2] and the Court. This attempt to shift blame to other agencies is without merit.[3]

Although claiming that "administrative lapses" prevented a timely initial appearance, the U.S. Attorney's Office has not addressed the Court's concerns that this type of violation be avoided in the future. The Motion for Reconsideration is notably silent on what efforts the U.S. Attorney's Office has made towards ensuring that other persons in federal custody in the Orlando Division will not become victims of future "administrative lapses." Until the Court is assured that the U.S. Attorney's Office is taking its responsibilities seriously, the Court is not convinced that other individuals' rights will not be violated in the future.[4]

A dismissal without prejudice will not provide any incentive for the U.S. Attorney's Office to establish procedures to avoid future problems. Had the U.S. Attorney's Office addressed the safeguards it had put in place to ensure the protection of individuals' rights

2. The U.S. Marshals Service, like the U.S. Attorney's Office, is a Justice Department agency which should be willing to work with the U.S. Attorney's Office in resolving this issue.

3. Under separation of powers principles, the Executive branch, not the Judicial branch, has the responsibility of bringing a defendant before the court for prosecution. If the Judicial branch were charged with this responsibility, it could not remain neutral in ruling on motions request-

ing relief for violations of the Speedy Trial Act. Thus, the Court rejects the efforts of the U.S. Attorney's Office to shift blame to the Clerk's Office and to the Court.

4. The Government argues that this case represents one isolated incident. However, the Court understands that other defendants brought into the Orlando Division during this time period on fugitive warrants were also not timely brought before a judicial officer.

in the future, the Court would have been inclined to reconsider its prior ruling. However, because the U.S. Attorney's Office chose to point fingers rather than present solutions, dismissing this indictment with prejudice is necessary to ensure future compliance with the Speedy Trial Act.

Based on the foregoing, it is ordered that the Government's Motion To Reconsider Court's Order (Doc. 17), filed February 12, 1998, is DENIED.

