**In re EBG HEALTH CARE II, INC., EBG Health Care III, Inc., EBG Health Care IV, Inc., Health Care Retirement Village, Inc., Debtors.**

Nos. 01–61589 to 01–61592.

United States Bankruptcy Court, W.D. Missouri.

Dec. 3, 2003.

Mark E. Gardner, Carmichael Gardner & Neal, Springfield, MO, Richard S. Bender, Rosenblum, Goldenhersh, Silverstein et al., Stuart J. Radloff, Radloff & Riske, St. Louis, MO, Robert A. Pummill, Pummill, Rubin & Haines, PC, Overland Park, KS, for Debtor/Interested Parties.

Jerry L. Phillips, Office of the U.S. Trustee, Kansas City, MO, for Interested Party U.S. Trustee.

Wendi Alper–Pressman, Gallop, Johnson & Neuman, Clayton, MO, for Creditor Committee.

## MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Chief Judge.

Debtors moved to reopen this Chapter 11 case to object to the claim of George Usher, as Representative of the Estate of Evelyn Jackson. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) over which the Court has jurisdiction pursuant to 28 U.S.C. § 1334(b), 157(a), and 157(b)(1). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, I will allow debtors to object to the Mr. Usher's claim. I further hold that the filing of an action in the Circuit Court of St. Louis, Missouri, is a nullity, since such suit was filed in violation of the discharge injunction. Finally, since the United States District Court has exclusive jurisdiction over wrongful death/personal injury suits, pursuant to 28 U.S.C. § 157(b)(5), I will transfer the objection to claim to the United States District Court for the Western District of Missouri for either a determination on the merits, or for transfer to the United States District Court for the Eastern District of Missouri.

## FACTUAL BACKGROUND

On June 15, 2001, EBG Health Care II, Inc., EBG Health Care III, Inc. EBG Health Care IV, Inc. and Health Care Retirement Village, Inc. (the Debtors) filed Chapter 11 bankruptcy petitions. The cases were administratively consolidated. On December 6, 2001, George Usher, individually and on behalf of Evelyn Jackson, filed a proof of claim in the amount of $2 million for personal injury to, and the wrongful death of, his mother Evelyn Jackson. According to the proof of claim, Ms. Jackson died on May 29, 2000. From January 1, 2000, until her death, Ms. Jackson resided in the St. Louis Avenue Nursing Home, a/k/a EBG Health Care II, Inc. Mr. Usher claims that the staff at the nursing home failed to provide adequate hydration and nutrition to Ms. Jackson, and that she developed bed sores, which were improperly treated. Mr. Usher alleges in an attachment to the proof of claim that Ms. Jackson died an untimely death as a result of Debtor's negligence. No lawsuit was pending when Mr. Usher filed the proof of claim.

On March 25, 2002, this Court confirmed a Plan of Reorganization (the Plan). The Plan provides for the payment of all allowed unsecured claims:

> Class 6—Class 6 consists of all other allowed unsecured claims, including any and all deficiency claims, claims of secured creditors whose liens or security interests have been foreclosed or otherwise invalidated, deficiency claims, and claims arising from the rejection of executory contracts and leases.[1]

The Plan also provides that the Class 6 claims will be paid on the distribution date:

> 4.06—Class 6—The Class 6 claim holders consist of allowed unsecured claims which shall be paid in full on the Distribution Date. Provided, however, to the extent that any member of Class 6 has filed a proof of claim with the Court in an amount which differs from that

---

1. Document # 138, page 4 (Consolidated Debtors' Third Amended Joint Plan of Reorganization, filed March 8, 2002).

scheduled by any given Debtor or shown on any given Debtor's books and records, then said Debtor shall contact the respective creditor to ascertain the basis for the discrepancy to determine if said discrepancy can be voluntarily resolved. If the respective Debtor and said creditor fail to reach an amicable resolution of said discrepancy, then said Debtor shall file an objection to said claim not later than the distribution date, thereby allowing the matter to be resolved by the Court.[2]

The distribution date is defined as:

the first business day occurring thirty days after either the entry of the Confirmation Order or the claims bar date, whichever is later.[3]

The parties do not dispute that the distribution date was May 4, 2002. Debtors reserved the right to dispute claims and delay distribution beyond the distribution date, provided an objection to the claim was filed prior May 4, 2002:

5.03—Disputed Claims Reserve—Until resolved, no payment or distribution shall be made to any holder of a claim to which an objection is filed by the Debtor on or before the Distribution Date. Upon said claim being subsequently allowed, either in whole or in part, said claimant shall receive payment of its claim, as allowed, upon the entry of a final non appealable order with respect to said claim and/or objection.[4]

As of the distribution date, however, Debtors had not objected to the claim of Mr. Usher. On November 15, 2002, this Court closed Debtors' cases.

2. *Id.* at page 9.

3. *Id.* at page 2.

4. *Id.* at page 10.

On May 28, 2003, Mr. Usher filed a Petition in the Circuit Court of St. Louis, Missouri (The Petition). The Petition is in two counts.[5] Count I is for Malpractice and Count II is for Breach of Contract. In Count I of the Petition Mr. Usher claims that the family of Evelyn Jackson suffered actual damages in the amount of $25,000. In Count II of the Petition, Mr. Usher claims that Debtors settled the claim for $2 million when this Court confirmed Debtors' Plan, absent any objection to the claim of Mr. Usher. Mr. Usher stated in the Petition that "[i]ncluded in the Chapter 11 plan of reorganization was the agreement to pay $2,000,000 to the Plaintiff for the wrongful death of Evelyn Jackson," and that Debtors "agreed to be bound by the terms of the confirmed Chapter 11 plan which included payment in the sum of $2,000,000 to Plaintiff." Mr. Usher concludes that the claim for $2,000,000 is a liquidated sum for which prejudgment interest at the statutory rate is just and proper, and that the claim of malpractice set forth in Count I was settled by the parties in Bankruptcy Court for the sum of $2,000,000.

On July 21, 2003, Debtors filed a motion to reopen their bankruptcy cases for the express purpose of filing an objection to the claim of Mr. Usher. On August 27, 2003, this Court granted the motion to reopen over the objection of Mr. Usher. On September 9, 2003, Debtors filed an objection to the claim of Mr. Usher and on October 7, 2003, Mr. Usher filed a response. On November 24, 2003, this Court held a hearing. At the hearing counsel for Mr. Usher argued that the allowance of the claim of Mr. Usher is now *res judicata.*

5. At the hearing held in this Court on November 24, 2003, counsel referred to the Petition, but did not offer it into evidence. Thereafter, the Court requested a copy of the Petition, and counsel for Mr. Usher forwarded it to the Court.

Counsel for Debtors claims that this Court already determined that Debtors can object to Mr. Usher's claim when it reopened the case for that express purpose.

## DISCUSSION

■ Article VIII of the Plan provides that, with leave of Court, Debtors can remedy any omission or correct any defect in the Plan post confirmation:

> 8.01—Upon leave of Court, the Debtors may propose amendments or modification of this Plan at any time prior to the entry of the Confirmation Order. After confirmation of the Plan, the Debtors may, with the approval of the Court, remedy any defect or omission, or reconcile any inconsistencies in the Plan or the Confirmation Order, in such manner as may be necessary to carry out the purpose and intent of the Plan.[6]

In addition, Article IX of the Plan provides this Court continuing jurisdiction to re-examine any allowed claims and any late-filed objections to those claims:

> 9.01—The Court will retain jurisdiction until the Plan is confirmed. Following confirmation of the Plan, the Court will retain jurisdiction for the following purposes:
>
>> 9.01.1—The classification of the claims of any creditors, re-examination of claims which have been allowed, and the determination of such objections as may be filed to creditors' claims.[7]

Thus, the plain language of the Plan authorizes this Court to re-examine claims post confirmation, and permits the Debtors to object to such claims. Mr. Usher relies on two cases for the premise that a confirmed plan eliminates a debtor's right to object to a proof of claim. In *In re Bancroft Cap Company*,[8] the Court refused to allow a debtor to object to a proof of claim after expiration of a 90 day deadline that the confirmed plan itself imposed.[9] The plan in *Bancroft* provided that objections to claims must be filed prior to the expiration of 90 days from the effective date, otherwise the claim is deemed allowed.[10] There is no such limiting language in Debtors' Plan. The Plan does provide that objections should be filed by the distribution date, but the Plan also reserves to this Court the right to re-examine any allowed claim. I note that in *Bancroft* the claim was liquidated, however, debtor objected to the creditor's manner of calculating the amount of the claim.

In *In re Varat Enterprises, Inc.*,[11] the court found that the plan as proposed expressly addressed the liquidated claim to which a secured creditor later sought to object.[12] The court, therefore, found that the creditor had had a full and fair opportunity to litigate the issue at the confirmation hearing, and was estopped from raising the issue post confirmation.[13] Contrary to the misrepresentation in the Petition here, the Plan makes no reference to Mr. Usher's Claim.

■ The cited cases are also not applicable because in this case Mr. Usher filed a Petition in Circuit Court in violation of the discharge injunction. The Plan provided that any creditor was enjoined from

---

6. *Id.* at page 12.

7. *Id.*

8. 182 B.R. 538 (Bankr.E.D.Ark.1995).

9. *Id.* at 540.

10. *Id.* at 538.

11. 81 F.3d 1310 (4th Cir.1996).

12. *Id.* at 1316.

13. *Id.* at 1317.

pursuing any claim except to the extent specifically provided in the Plan:

> 7.01—With respect to EBG II, EBG III, EBG IV and HCRV, the confirmation of this Plan shall act as a bar to any creditor thereafter pursuing any claim, whether contingent, unliquidated or disputed, it held or alleges to have held against the Debtor or the property of the Debtor, except to the extent specifically provided to the contrary herein, all in accordance with the provisions of 11 U.S.C. Section 1141.[14]

Mr. Usher's Claim was an unliquidated claim on the date of this Bankruptcy filing. Despite the language in the Plan, Mr. Usher could not execute on a proof of claim. He, therefore, filed a Petition in state court for the purpose of obtaining a judgment by representing that the parties had settled the dispute in bankruptcy court. Section 1141 of the Code provides as follows:

> (d)(1) Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan—
>
> > (A) discharges the debtor from any debt that arose before the date of such confirmation, and any debt of a kind specified in section 502(g), 502(h), or 502(i) of this title, whether or not—
> >
> > (i) a proof of claim based on such debt is filed or deemed filed under section 501 of this title;
> >
> > (ii) such claim is allowed under section 502 of this title; or

> (iii) the holder of such claim has accepted the plan.[15]

In the Eighth Circuit, actions taken in violation of the automatic stay are void *ab initio*.[16] Likewise, actions taken in violation of the discharge injunction are void.[17] Therefore, the lawsuit is void.

In addition, the cited cases are inapplicable because this is a lawsuit for personal injury/wrongful death. The United States Code provides that bankruptcy courts may not hear personal injury tort or wrongful death claims:

> (b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.
>
> (2) Core proceedings include, but are not limited to—
>
> > .     .     .     .     .
> >
> > (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or equity security holder relationship, except personal injury tort or wrongful death claims.[18]

Rather, the district court is authorized to hear such claims:

> (5) The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in

---

14. Doc. # 138, page 12.

15. 11 U.S.C. § 1141(d)(1)(A).

16. *LaBarge v. Vierkant (In re Vierkant)*, 240 B.R. 317, 320 (8th Cir. BAP 1999) (holding that a default judgment entered in violation of the automatic stay is void and cannot be given collateral estoppel effect).

17. *Motley et ux. v. Equity Title Co., et al. (In re Motley)*, 268 B.R. 237, 241 (Bankr.C.D.Ca. 2001) (stating that any collection action that violates the discharge injunction is void).

18. 28 U.S.C. § 157(b)(2)(O).

which the claim arose as determined by the district court in which the bankruptcy case is pending.[19]

Thus, since this lawsuit was not pending in state court on the date of the bankruptcy filing, but the alleged injury took place prior to that date, Mr. Usher's claim must be resolved either in the United States District Court for the Western District of Missouri, or, since Ms. Jackson died in St. Louis, Missouri, in the United States District Court for the Eastern District of Missouri.

Mr. Usher claims that the filing of a proof of claim, with the attendant notice and Debtors' failure to object, converted his unliquidated claim for damages into a final judgment, which is entitled to *res judicata* effect. Yet no court heard the merits of the claim. And, he contends that that enforceable judgment was entered by virtue of this Court's Order confirming the Plan, an Order that in no way specifically referred to his claim, and that was entered by a Court that does not have jurisdiction to hear personal injury or wrongful death claims such as this one.

In his Petition in state court, Mr. Usher states that he sustained $25,000 in actual damages. The claim in this Court is in the amount of $2 million. There is no harm to Mr. Usher from requiring that he prove the merits of his claim for $2 million. In *Harstad v. First American Bank*,[20] the Eighth Circuit rejected the debtors' attempt to bring post confirmation preference actions because debtors did not disclose their intentions and reserve that right in their confirmed plan.[21] The Court noted that in voting whether to confirm a plan, creditors have the right to know of any potential causes of action that might enlarge the estate.[22] Here, by contrast, the Plan specifically reserved to Debtors the right to object to claims after confirmation, and to request re-examination of allowed claims after the distribution date.

Indeed, to the extent there has been any harm to Mr. Usher from a delay in resolving his claim, he bears at least some responsibility for that delay. The case is in its current posture in no small measure due to the failure of Debtors' counsel to pay sufficient attention to the provisions of the Plan, and to Mr. Usher's Claim. But, Mr. Usher waited more than a year after the distribution date to assert his rights, and then did so in violation of the terms of the Order of Confirmation, and federal law, by bringing suit in a court lacking jurisdiction to resolve the claim. Had Usher promptly filed a motion to enforce the terms of the Plan, or to dismiss or convert the bankruptcy cases, his claim would have been more promptly resolved on its merits. There is no harm to his interest in requiring him to prove his claim in a court with jurisdiction to determine such a claim.

Pursuant to 28 U.S.C. § 157(b)(C)(5), the objection by Debtors to Mr. Usher's claim should be transferred to the United States District Court for the Western District of Missouri for either a determination on the merits, or for transfer to the United States District Court for the Eastern District of Missouri.

An Order in accordance with this Memorandum Opinion will be entered this date.

**19.** *Id.* at § 157(b)(5).

**20.** 39 F.3d 898 (8th Cir.1994).

**21.** *Id.* at 902.

**22.** *Id.* at 903.